UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE'S TRUCKING, LLC
d/b/a LOAD ONE,

Plaintiff,

CASE NO. 05-72635

-vs-

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

HOLMES QST., INC., HOLMES QUICK AND SAFE TRANSPORT, INC., and ROBERT FOSTER d/b/a TAB TRANSPORT

Defendants.

AND

HOLMES QST., INC.,

Defendant/Cross-Plaintiff

-vs-

ROBERT E. FOSTER, d/b/a
TAB TRANSPORTATION,

Defendant/Cross-Defendant

_______________________________________/

**ORDER DENYING DEFENDANT HOLMES' MOTION FOR SUMMARY JUDGMENT AGAINST (1) PLAINTIFF LOAD ONE AND (2) CROSS DEFENDANT FOSTER**

**BACKGROUND:**

This is a trucking cargo claim brought pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. (Compl. ¶ 2; Pl.'s Resp. 1). Plaintiff Diane's Trucking d/b/a Load One ("Load One") is a Michigan corporation that had an agreement with

Sovereign Sales, LLC ("Sovereign"), a wholesaler and distributor of "perfume products,"[1] to ship Sovereign's good to locations throughout the United States. (Compl. ¶ 7).

Plaintiff Load One and Defendant Holmes QST, Inc. ("Holmes") enjoyed a mutually advantageous business relationship in which Plaintiff Load One contracted with Defendant Holmes on many occasions to carry cargo to specified locations. (*Id.* at ¶ 8).

On or around September 17, 2003, Plaintiff Load One and Defendant Holmes entered into an agreement ("the Agreement") wherein Defendant Holmes agreed to provide motor contract carriage to Plaintiff Load One under a continuing agreement designed to meet the transportation needs of Plaintiff Load One and its customers. (*Id.* at ¶ 9). Pursuant to the Agreement, Defendant Holmes agreed to defend and hold Plaintiff Load One harmless from, and indemnify Plaintiff Load One for, any and all losses or damage to freight in the possession and control of Defendant Holmes. (*Id.* at ¶ 10). Defendant Holmes also agreed to maintain primary cargo insurance of at least $100,000. (*Id.* at ¶ 11). Defendant Holmes further agreed to assume full and complete responsibility and liability, regardless of fault, for any loss and damage to any goods while in possession or control of Defendant Holmes and/or its agents and/or representatives. (*Id.* at ¶ 12).

Plaintiff Load One contends that Defendant Holmes and Defendant Robert E. Foster, d/b/a TAB Transportation ("Foster") entered into a lease agreement wherein Foster would physically ship and carry the goods that Defendant Holmes had agreed to ship and/or carry for other carriers and/or brokers. (*Id.* at 13).

---

[1] (First Amended Complaint ¶ 17) ("The goods to be transported were perfume products denoted as "toilet preps" on the bill of lading . . . .").

On or about October 1, 2004, Plaintiff Load One entered into the instant specific agreement with Defendant Holmes wherein Defendant Holmes agreed to pick up specified goods from Pak Rite in Ecorse, Michigan and transport them to Walgreen's distribution center in Orlando, Florida, for the benefit of Sovereign (the "Sovereign agreement"). (Compl. ¶ 14; Def.'s Br. 13). The Sovereign agreement was signed by cross-Defendant Foster as agent of Defendant Holmes.[2] (*Id.* at ¶ 15).

On or about October 1, 2004, a bill of lading was issued which designated Plaintiff Load One as the carrier. Brian Vickery, a driver and agent of Foster, acknowledged receipt of the cargo as carrier. (*Id.* at ¶ 16). The goods to be transported were denoted as "toilet preps - full value" on the bill of lading ("goods").

On or about October 4, 2004, Foster's tractor truck, driven by Brian Vickery, carrying Defendant Holmes' tractor trailer, was broken into while parked at a truck stop in Jackson, Georgia. (*Id.* at ¶¶ 18-19). A significant portion of the goods were stolen and never recovered. (*Id.* at 19). The value of the stolen goods was approximately $71,745.00. (*Id.* at 20).

Plaintiff Load One paid Defendant Holmes $2,300.00 representing payment in full for the shipment of the goods. Plaintiff Load One made a claim in writing to Defendant Holmes, asserting that Defendant Holmes was liable for the full value of the loss. (Compl. ¶ 22).

On or about May 17, 2005, Plaintiff Load One paid its customer Sovereign $71,745.00, the full amount of Sovereign's loss, and Sovereign assigned to Plaintiff Load One all rights to

---

[2] Foster was employed as the dispatcher for Defendant Holmes, and also personally owned four of the tractor trucks that hauled Defendant Holmes' trailers. One of Foster's tractors, driven by Foster's employee, Brian Vickery, was hauling the Defendant Holmes trailer involved in the instant case.

pursue its claim of loss (the "Assignment"), including any claims that Sovereign may have had against Defendant Holmes. (*Id.* at ¶¶ 23-24).

Plaintiff Load One filed its Original Complaint on July 1, 2005. Defendant Holmes filed a cross-claim against Foster on August 8, 2005. Plaintiff Load One then filed an Amended Complaint on March 7, 2006. In the Amended Complaint, Plaintiff Load One alleges claims of negligence on the part of all Defendants, breach of contract against Defendant Holmes, express indemnification against Defendant Holmes, and indemnification pursuant to 49 U.S.C. § 14706 against all Defendants.

Defendant Holmes filed the instant Motion for Summary Judgment on April 22, 2006. Plaintiff Load One filed its response on May 24, 2006. Defendant Holmes filed its reply on June 14, 2006. Foster, who is employed by Holmes, did not file any pleadings. The Court heard oral argument in the case on July 12, 2006.

**ANALYSIS:**

**A. Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its

> motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd Ct.y Bd. of*

*Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B. Plaintiff's Claims**

Pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, which covers claims against carriers for damages resulting from the interstate transport of goods, "a carrier transporting property [must] issue a bill of lading to the shipper, and [is] liable to the one entitled to recover under the bill of lading for loss of or injury to the property." *Am. Rd. Serv. Co. v. Conrail*, 348 F.3d 565, 568 (6th Cir. 2003).

The Supreme Court has held that the Carmack Amendment:

> . . . codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.

*Mo. Pacific R. R. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964). The burden of proof has been set forth as follows:

> [I]n an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Plough, Inc. v. Mason & Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980) (quoting *Elmore & Stahl*, 377 U.S. at 137). Once the shipper makes out a prima facie case, the burden then shifts to the carrier to show that (1) it was not negligent and (2) the sole cause of the injury was one of the five exceptions listed in *Elmore & Stahl*, *supra*. *Plough, Inc.*, 630 F.2d at 470-71 (citing *Am. Hoist & Derrick Co. v. Chicago, Milwaukee, St. Paul & Pacific R. R.*, 414 F.2d 68, 72 (6th

Cir. 1969).

Defendant Holmes has not disputed in its present motion that the elements of a *prima facie* case have been met. Defendant Holmes denies that it qualifies as a common carrier, and states that Plaintiff had a duty as a common carrier to pay the loss claim of Sovereign Sales. Defendant Holmes states that it can only be held liable if Plaintiff proves that it is negligent.

Through the passage of the Interstate Commerce Commission Termination Act of 1995, Congress effectively abolished the distinction between being licensed as a common carrier or a contract carrier, choosing instead to include “only one class of motor transport carrier -- the motor carrier . . . .” *M. Fortunoff of Westbury Corp. v. Peerless Ins. Co.*, 432 F.3d 127, 136 (2d Cir. 2005); *see generally* 49 U.S.C. § 13102. Thus, the Court finds that Defendant Holmes’ argument that Plaintiff must prove that Defendant Holmes was negligent because of its status as a “contract carrier” is without merit.

Defendant Holmes does not move for summary judgment on the merits of the underlying claim. Rather, Defendant Holmes contends that Plaintiff Load One’s claims are barred because Plaintiff intentionally misdescribed the cargo to be shipped, and, therefore, Defendant cannot be found liable for the resultant damages.

The bill of lading at issue was prepared by Sovereign. Sovereign’s vice president, Michael Klimczak, testified that the classification of “toilet preps” indicated on the bill of lading is an industry standard in the fragrance industry. (Klimczak Dep. 43, 47). Klimczak stated that part of the reason for doing so was for security purposes and to avoid theft. (*Id.* at 47). Significantly, Klimczak further averred that the products in issue were not perfumes, but were “colognes, aftershave, eau de toilettes,” which he indicated are “watered down versions of

perfumery product." (*Id.* at 46). "[W]e do not ship pure perfumes. In this industry it's a different, higher value that you would run at a perfumery product, yes." (Klimczak Dep. 64-65, Pl.'s Resp. Ex. 7). In addition, Klimczak stated that he identified the goods as "toilet preps" because there was an assortment of different goods in the cargo. (*Id.* at 57). He added: "It's colognes, aftershaves, eau de toilettes. They are not perfumes. They are watered down versions of perfumery product." (*Id.* at 65).

Defendant Holmes disputes this explanation for the characterization, and argues that any intentional misdescription serves as a bar to Plaintiff's recovery of damages. Defendant Holmes states that 49 U.S.C. § 80116 provides criminal penalties for intentionally misdescribing cargo. Title 49 U.S.C. § 80016 is a criminal statute, and Defendant Holmes has provided no authority for utilizing this particular criminal statute as a bar to filing a civil suit. Further, the statute imposes criminal penalties only upon a showing of a specific intent to defraud. In this civil action, this Court does not find specific criminal intent to defraud Holmes based on the cargo label "toilet preps full value." Thus, the Court finds that 49 U.S.C. § 80016 does not support Defendant Holmes' contention that Plaintiff's claim is barred.

Here, Defendant Holmes contention is that it would not have accepted the cargo for shipment had the value been known because the insurance policy coverage limit was $100,000.00, and the cargo in question was valued at over $140,000.00. Defendant Holmes further avers that Plaintiff and Sovereign's failure to disclose the exact nature and value of the cargo to Defendant Holmes establishes a situation where there is no valid bailment of goods, and precludes a finding of liability on the part of Defendant Holmes. The Court notes that Defendant Holmes never requested an explanation of either the exact nature of the goods, or the specific

value of the cargo.

Plaintiff responds that it had no duty to disclose the full value of the cargo. In addition, Plaintiff states that it has capped requested damages below the policy limit of $100,000.00. Foster's deposition testimony indicates that Defendant Holmes did not charge based upon the contents of the goods, but instead that the amount to be charged was based upon the distance traveled. Foster also testified that normally he does not know the contents of the cargo to be shipped, unless such cargo involves hazardous materials for which special vehicle placards and licensing might be required. (Foster Dep. 29-30, 35, 54, Pl.'s Resp. Ex. 1). Foster also testified that he does not know if he has ever previously shipped merchandise worth more than $100,000.00 because he does not inquire as to the contents of the cargo to be shipped:

> Q: How do you know that you are not hauling something greater than what your insurance coverage would be if you don't ask what the goods are?
>
> A: I don't, I guess.

(*Id.* at 55). Foster testified that he works for Defendant Holmes as a dispatcher, and that Defendant Holmes furnishes the insurance for the cargo and the trailer. (Foster Dep. 16, 22).

Taking into account the above case law and the evidence in the record, the Court finds that summary judgment is inappropriate on the question of whether Plaintiff's claim is barred by its alleged misdescription of the cargo. Defendant has failed to show that Plaintiff or Sovereign had a duty to provide any more detail on the bill of lading other than what was provided by Sovereign, and failed to show that the description "toilet preps - full value" was an inaccurate manner of describing the cargo. Defendant Holmes' argues that Plaintiff's alleged intentional misdescription violates 49 C.F.R. 1035.2(5) (the correct cite is 49 C.F.R. 1035, Appendix B, Section 5) which states:

> No carrier hereunder will carry or be liable in any way for any documents, specie, or for any *articles of extraordinary value* not specifically rated in the published classifications or tariffs unless a special agreement to do so and a stipulated value of the articles are indorsed hereon.

49 C.F.R. 1035, App. B, Sec. 5 (emphasis added). 49 C.F.R. 1035 deals with requirements for bills of lading. The Court finds that this regulation does not serve as a bar to Plaintiff Load One's claim because Defendant Holmes is not being charged with liability for articles of extraordinary value. Plaintiff Load One has requested damages of approximately $71,745, which falls well within Defendant Holmes' insurance policy limit of $100,000. If Defendant Holmes's insurance company would have paid up to $100,000 for the goods, then the Court cannot find as a matter of law that $71,745 for the goods constitutes liability for articles of extraordinary value. Further, the articles were not perfume which carries a higher value than the articles contained in the shipment. The toilettes contained in the shipment were not of extraordinary value, taking the evidence in the light most favorable to the non-moving party.

Moreover, although Foster stated in his deposition that he would not ship goods valued in excess of Defendant Holmes' insurance policy, Foster also testified that not only does he usually not have any knowledge of what he is shipping, but that he does not charge a fee based on the value of the goods being shipped. Indeed, William O'Neil, president of Defendant Holmes, testified that the charge for moving goods is based on "the distance that the load is being transported." (O'Neil Dep. 42-43). Plaintiff added the term "full value" on the bill of lading. Charles Desira, operations manager of Plaintiff Load One, testified that he told Foster that it was a valued shipment that the shipper would seal:

> These are my instructions to tell [Foster] the carrier at Holmes QST . . . . They would seal the trailer and the consignee will break the seal at destination . . . .
> . . .

> Yes, I indicated it was a valued shipment indicating that the shipper is going to seal the trailer and I informed [Foster] that the consignee will break the seal.

(Desira Dep. 11).

Michael Klimczak, Vice President of Sovereign Sales, the shipper, testified as to the meaning of the phrase “toilet preps - full value” on the bill of lading:

> Full value is what we put on all of our fragrance shipments to indicate the value we are shipping that shipment at to the carrier.
> . . . .
>
> We do not put the monetary value on there because of security reasons, because it's a high value shipment.

(Klimczak Dep. 12). The bill of lading did not state the value of the goods. As noted before, Defendant Holmes has acknowledged that Plaintiff would not have had to pay higher shipping costs for more valuable cargo.

Plaintiff provided the affidavit of George Beaulieu, a trucking expert with over 35 years of experience in the trucking industry, who noted that the truck driver, Brian Vickery, admitted in his statement to the insurance adjusters that he believed he was carrying “fragrance.” (Beaulieu Decl. ¶ 11, Pl.'s Resp. Ex. 12). In addition, Plaintiff maintains that it is only requesting damages less than $100,000.00. These facts lend credence to Plaintiff's argument that it was not trying to fraudulently conceal the value of the goods. Consequently, even if the cargo did contain an inaccurate description, Defendant Holmes has not met its burden of proving that the alleged misdescription caused or contributed to the eventual loss.[3]

Further, Plaintiff Load One's Vice President of Risk Management, Robert Girard,

[3] There also appears to be a genuine issue of material fact as to whether the instant description would constitute a misdescription. Beaulieu also stated in his declaration that more than one classification may have been proper for the cargo involved. (*Id.* at ¶ 17).

testified that he believed that "toilet preps" was an accurate freight classification because the shipment constituted a "lesser grade of [] designer fragrances." (Girard Dep. 76, Def.'s Mot. Ex. D). Girard also indicated that he did not believe Plaintiff Load One had withheld information from Defendant Holmes and Foster because "they have hauled loads similar to this prior to this." (*Id.* at 74).

Significantly, the National Motor Freight Classification 100 - AE for "toilet preparations," # 59420, references related numbers including # 59425, which includes "cosmetics not more specifically described elsewhere in the classification":

> The term 'Cosmetics' embraces articles intended to be rubbed, poured, sprinkled or sprayed on, introduced into or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance.

(Klimczak Dep. Ex. 4, 2). Taking the evidence in the light most favorable to the non-moving party, this description appears to apply to the instant shipment. Vincent Killewald, Chief Financial Officer of Sovereign, described the product as eau de toilette:

> It's an eau de toilette, which is a, it's less intense in a fragrance. It has the same volatile oils cut with much more alcohol so it is much less costly than a perfume.

(Killewald Dep. 8). He later affirmed the description of one of the major parts of the lost load: "Curve men's mixed gift product":

> Q: [T]hat's involving a 2.5 ounce spray, 2.5 ounce soother, deodorant and 2.5 ounce body wash . . . .
>
> A: Correct.

(*Id.* at 18).

Taking the above evidence in the light most favorable to the non-moving party, the Court denies Defendant Holmes' Motion for Summary Judgment on this issue.

**C. Liability of Defendant Holmes for Foster's Actions**

Next, Defendant Holmes contends that the Court should find that Foster is solely liable for the theft of the cargo at issue as a result of the negligence of Foster and his employees and agents as a matter of law. Cross-Defendant Foster, an employee of Defendant Holmes, did not file a response to the motion.

The Amended Complaint contains several allegations against Defendant Holmes, including negligence, breach of contract, express indemnification, and indemnification pursuant to 49 U.S.C. § 14706. Defendant Holmes' motion appears to pertain only to the negligence count, and, therefore, the Court will only address summary judgment on this claim.

Defendant Holmes argues that it cannot be held responsible for the actions of Foster and his employees and agents. It states that Plaintiff cannot establish liability based upon any exception to the general rule that a person who hires an independent contractor is not liable for damages and injuries that the independent contractor negligently causes. Defendant Holmes further contends that it did not assume any of the employer-related duties which existed between Foster and its driver, Brian Vickery.

Prior to the passage of the Interstate Common Carrier Act in 1956, the Michigan Supreme Court addressed a similar issue in *Hazard v. Great Central Transport Corp.*, 270 Mich. 60 (Mich. 1935). In *Hazard*, the defendant transport company was engaged in transporting merchandise and freight for hire under contracts with shippers. *Id.* at 62. The transport company hired two drivers and their truck to carry freight to ship cargo interstate. *Id.* During interstate transport, one of the drivers collided with an automobile, which then caused damage to a third vehicle. *Id.* On appeal of the judgments entered against the transport company, the

defendant contended that the driver was an independent contractor, and that the transport company was not liable for the driver's negligence. *Id.* at 63. The Michigan Supreme Court affirmed the judgments, finding that the transport company was liable pursuant to the doctrine of *respondeat superior* and the contract between the driver and the transport company did not affect that liability. *Id.* at 71. In rejecting the transport company's independent contractor theory, the supreme court stated that "[t]he factual relations between the company and [the driver] control, regardless of the provisions in the so-called contract." *Id.* at 69.

Importantly, Foster indicated that he leased vehicles to Defendant Holmes, and that he never leased to more than one company at a time. (*Id.* at 23-24). He also indicated that "anything [he moves] has to be moved through Holmes QST because they have the licensing." (*Id.* at 28). A copy of the lease agreement, which appears to be on file with the Michigan Department of Consumer & Industry Services, is attached to Foster's deposition. (*See* Foster Dep. Ex. 2, Def.'s Mot. Ex. E).

In 1956, the Interstate Common Carrier Act was amended "to require motor carriers to be fully responsible for the operation of vehicles certified to them in order to protect the public from certain abusive conduct which had resulted from the trucking industry's frequent use of leased or borrowed vehicles." *Ryder Truck Rental Co. v. UTF Carriers, Inc.*, 719 F. Supp. 455, 457 (W.D. Va. 1989).

Pursuant to 49 U.S.C. § 14102(a)(4), an authorized motor carrier that leases motor vehicles to transport goods must:

> (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carriers.

In denying a motion for summary judgment by a transport company, a 2003 district court within the Sixth Circuit has noted that many courts have found vicarious liability where there is a lease relationship between the carrier and driver:

> In this case, Mann and Epperson signed a written lease that contained provisions that complied with the federal regulations. (Lease Agreement, p. 2, sections (d) and (k).) Mann acknowledges that it did, in fact, agree to these federally mandated terms in the written lease that he signed. (Aff. of William C. Mann, Inc. P 2; Dep. of William C. Mann, Inc. pp. 13-25.) Mann, nevertheless, maintains that it may not be held vicariously liable for Epperson's actions because Epperson operated as an independent contractor. Mann points to several undisputed facts to support this contention, including Epperson's compensation, his ability to determine his own hours and haul for anyone that he wished, his furnishing his own tools and equipment, and Mann's lack of authority to control the course, method, manner or conduct of Epperson's work. (See Aff. Mann; Dep. Mann pp. 26-27; Lease Agreement.)
>
> Although the Sixth Circuit has not directly addressed this question, most courts have concluded as a matter of federal law that the regulatory scheme for carrier-lessees imposes an irrebuttable statutory employment relationship between the driver and the carrier-lessee. *Gilstorff v. Top Line Express*, No. 96-3081, 1997 U.S. App. LEXIS 780 at *7, n. 6 (6th Cir. Jan. 14, 1997); *see e.g.*, *Baker v. Roberts Express, Inc*., 800 F. Supp. 1571 (S.D. Ohio 1992) (finding that a statutory employment relationship exists because the applicable federal statutes and regulations "create an irrebuttable presumption of an employment relationship between a driver of a leased vehicle furnished by a contractor-lessor and a carrier-lessee."); *Laux v. Juillerat*, 680 F. Supp. 1131 (S.D. Ohio 1987), aff'd, 860 F.2d 1079 (6th Cir. 1988) (holding that federal regulations require a carrier-lessee to assume legal control of the leased vehicle and driver, and should be held vicariously liable for the negligence of the driver and the resulting damages); *see also Judy v. Tri-State Motor Transit Co.*, 844 F.2d 1496, 1501 (11th Cir. 1988) (holding that "federal law creates a statutory employment relationship between interstate carriers and the drivers of the trucks leased to them"); *Planet Ins. Co. v. Transport Indemnity Co.*, 823 F.2d 285, 288 (9th Cir. 1987) (noting that "the special interstate character of the authorized carrier industry underscores the need to refer to the federal scheme to determine when mandatory coverage comes into effect"); *Price v. Westmoreland*, 727 F.2d 494, 497 (5th Cir. 1984) (holding that "[a carrier-lessee is] vicariously liable as a matter of law for [lessor's] negligence and the traditional common law doctrine of master-servant relationships and respondeat superior does not apply."); *Proctor v. Colonial Refrigerated Transp., Inc.*, 494 F.2d 89 (4th Cir. 1974) (stating that "the statute and regulatory pattern clearly eliminates the independent contractor

> concept from such lease arrangements and casts upon [the carrier-lessee] full responsibility for the negligence of [the driver] of the leased equipment."); *Ryder Truck Rental Co., Inc. v. UTF Carriers*, Inc., 719 F. Supp. 455, 458 (W.D. Va. 1989) (holding that "federal law requires a driver furnished by a lessor-contractor to be considered a statutory employee of the lessee-carrier, thereby preempting traditional common law doctrines of master-servant relationships and respondeat superior when the driver injures a member of the public while the lease is in effect.").
>
> In dictum, the Sixth Circuit has stated that "undoubtedly, 49 U.S.C. § 11107(a)(4) and 49 C.F.R. § 1057.12(c) render lessee carriers vicariously liable, notwithstanding traditional principles of agency, for injuries sustained by third parties resulting from the negligence of the drivers of leased vehicles." *Johnson v. S.O.S. Transport, Inc.*, 926 F.2d 516, 521 (6th Cir. 1991) (emphasis added). Moreover, in *Gilstorff*, the Sixth Circuit seems to have adopted the majority view that a carrier-lessee is the statutory employer of a driver. *See Gilstorff*, 1997 U.S. App. LEXIS 780 at *7, n. 6. This court finds that Mann, as a carrier-lessee, may be considered the statutory employer of Epperson and held vicariously liable for any of Plaintiff's injuries attributable to Epperson's negligence. Accordingly, Mann's motion for summary judgment as a matter of law with respect to vicarious liability is DENIED.

*Holliday v. Epperson*, No. 1:02-cv-1030-T, 2003 U.S. Dist. LEXIS 19986, 7-12 (W.D. Tenn. Aug. 26, 2003) (unpublished). Thus, because Foster leased trucks to Defendant Holmes, pursuant to federal law, Defendant Holmes is estopped from denying responsibility for the loss that occurred.

The Court finds that even if there was no lease agreement covered by federal law, Defendant Holmes still cannot establish that Foster operated as an independent contractor. The Court notes that on the Statement of Agreement between Plaintiff Load One and Defendant Holmes, which governs the terms of the dispute at hand, Robert Foster's signature appears as the authorized signature under the Defendant Holmes carrier designation. (*See* Vickery Dep. Ex. 3, Def.'s Mot. Ex. G). Foster affirmed in his deposition that it was his signature on the agreement. (Foster Dep. 19, Def.'s Mot. Ex. E). In addition, Defendant Holmes attempts to argue that Foster

is an independent contractor, but Foster testified in his deposition that he was employed as a dispatcher for Defendant Holmes. (*Id.* at 16). Foster testified that whether a load will be moved by Defendant Holmes or whether it will be moved by Foster "depends on what trucks are available." (*Id.* at 17). According to Foster, Plaintiff Load One has contacted Foster, as Holmes' dispatcher, directly in the past to arrange shipments. (Foster Dep. 17, Def.'s Mot. Ex. E). The Court also notes Foster's familiarity with Defendant Holmes' business practices, and his consistent use of the term "we" when referring to facts related to the terms of the contract signed by Plaintiff Load One and Defendant Holmes:

> Q: And then after that it says specifically that it, referring I assume to the carrier, maintains appropriate insurance. What does that mean to you? What is the, what does the appropriate insurance mean, if you know?
>
> A: Whenever we do business with a company we fax over our insurance papers so they know exactly how much insurance we have which we carry $100,000 worth of insurance for that particular thing and I assume they know what insurance we have because I've already sent them the insurance papers. So I would just have to assume that if they are going to give us a load, that the load would fall within the parameters of that insurance.
>
> . . . .
>
> Q: . . . Do you know, in fact, did Load One [] specifically know that Holmes QST Incorporated had a maximum insurance coverage of $100,000 when they entered into this agreement?
>
> A: When we enter into any agreement we fax that over, that's just part of the packet that they get. . . .

(Foster Dep. 20-21, 45, Def.'s Mot. Ex. E). This evidence only further supports the Court's finding that Foster did not operate as an independent contractor. Further, Foster's testimony indicates that Plaintiff Load One was aware of the $100,000.00 insurance limit, and this case does not involve a claim over $100,000.00.

Based upon federal law, case law, and the findings in the record, the Court concludes that Defendant Holmes is liable for any negligence on the part of Foster, and denies summary judgment to Defendant Holmes on its argument that cross-Defendant Robert Foster is solely liable for damages suffered by Plaintiff Load One. The instant contract was between Plaintiff and Holmes.

**CONCLUSION:**

For the foregoing reasons, the Court DENIES Defendant Holmes' Motions for Summary Judgment.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 31, 2006.

s/Denise Goodine
Case Manager